Mr. Justice Strong
delivered the opinion of the court: ,
Whether the contract under which the appellant claims to have become the owner of the sugar, molasses, and rum was so far executed that, without more, it would have passed the property, had it been legal, it is unnecessary to consider; for we are of opinion that, whether executed or executory, it was illegal and void. It was a clear case of trading with apublic enemy. The subject of the contract was personal property within the Confederate lines. It was a crop at the time on the plantation of Leo. L. Johnson, in the parish of La Fourche, near La Fourche crossings. It belonged also to Johnson, who was then domiciled in the enemy’s territory, and who was himself an enemy. This is expressly stated in the contract itself. The appellant’s right, therefore, is founded upon an attempted purchase, during the war, from an enemy, of enemy’s property, in direct violation not only of the laws which always prevail in a state of war, but also in violation of the acts of Congress. It is vain to contend that any right can be acquired under such a contract.
It¡is true the sale was negotiated by agents of Johnson living-outside of the enemy’s territory, but it was not the less his act because it was done by those acting- under-his authority. Nothing is clearer, says President Woolsey, than that all commercial transactions of whatever kind (except ransom contracts) with the subjects or in the territory of the enemy, whether direct or indirect, as through an agent or partner who is neutral, are illegal and void. (Woolsey’s International Law, sec. 117.) This *89 is 110b inconsistent with, the doctrine tbat a resident in tbe territory of one belligerent may have in times of war an agent residing in the territory of the other belligerent;, to whom his debtor may pay the debt, or deliver property in discharge of it. Such payments or deliveries involve no intercourse between enemies. The present case exhibits a transaction not wholly within enemy’s territory, bat a’ sale from an enemy to a friend. If that can be made through an agent, then the rule whi,ch prohibits commercial intercourse is a mere regulation of the mode of trade. It may be evaded by simply maintaining an agency in the enemy’s territory. In this way every pound of cotton or of sugar might have been purchased by northern traders from those engaged in the rebellion. Perhaps the rule is stated too broadly in Woolsey’s Commentaries, and in many elementary books, but it is certain that “ every kind of trading or commercial dealing or intercourse, whether by transmission of money or of goods, or orders for the delivery of either between two countries, (at war,) directly or indirectly, or through the intervention of third persons or partnerships, or by contracts in any form looking to or involving such transmission,” are prohibited. — Kershaw v. Kelsey, (100 Mass. R., 561.) The contract in this case contemplated the delivery of the sugar, molasses, and rum at New Orleans, then within the Federal lines. There, on its being weighed and measured, payment was to be made to Johnson’s agents. If this be allowed the enemy is benefited, .and his property is protected from seizure or confiscation.
It has been argued that because Burbridge.& Co., the agents, had a lien upon the property for advances made by them, and had also a power to sell for the repayment of their advances, the sale which was made ought not to be regarded as a sale by Johnson. Yet the only authority they had to sell at all, resulted either from express power given to them by the owner, or from the relation to him in which they then stood. They might have sold their lien, or the debt secured’by it; and had they done so, the sale would have involved no trading with the enemy. But they undertook to sell Johnson’s property, describing it as such in the instrument of sale, and describing themselves as Johnson’s agents. Yery clearly, in effect, the parties to the transaction were the appellant and a public enemy.
For this reason the judgment is affirmed.